**Hattie Ruth JONES, Plaintiff,**

v.

**George Bennett HAMM, a minor, over the age of fourteen years, Defendant.**

**Civ. A. No. GR–65–13.**

United States District Court
D. South Carolina,
Greenwood Division.
Aug. 30, 1967.

Eugene C. Griffith, Newberry, S. C., Victor K. Meador, Atlanta, Ga., for plaintiff.

James D. Jefferies, Greenwood, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

Plaintiff, resident of Georgia, seeks damages in excess of $10,000 from defendant, resident of South Carolina. An automobile collision on S. C. Highway No. 34 where it intersects S. C. secondary road No. S–36–292 at or near the westerly limits of the town of Silverstreet[1] in Newberry County, South Carolina, gives rise to the controversy. This court has jurisdiction.[2] Upon issues joined the testimony was heard before the court without a jury. As directed by Rule 52(a) Federal Rules of Civil Procedure this court finds the facts specially and states separately its conclusions of law.

### FINDINGS OF FACT

On August 11, 1963, plaintiff was driving the family[3] 1959 Cadillac from Atlanta, Georgia, to Newberry, S. C., to visit her husband, a regular Army soldier. He was on maneuver assignment. On leaving Greenwood she proceeded east and along S. C. Highway No. 34. She had not been in the area previously. A short distance west of the small settlement which is called Silverstreet she proceeded up and over an overpass, travelling 40 to 45 miles per hour. As she approached the intersection[4] of Highway 34 and a secondary road designated S–36–292, a 1958 Chevrolet, driven by defendant, came out of the secondary road, to plaintiff's right. Plaintiff veered left in an attempt to avoid a collision but was unable to do so. As a result of the collision plaintiff's car was knocked across the center line and down an embankment with resulting injuries to plaintiff.

George Hamm was driving his mother's car for pleasure, accompanied by his cousin, Harold Branham. He says he stopped at the stop sign, looked both ways, and asked his cousin which direction to take. Branham said he did not care. Hamm proceeded into the highway to turn west toward Greenwood. At that time he says he saw plaintiff coming over the hill. The wreck occurred. Plaintiff asked Hamm if he saw her coming; he told her not until she came over the hill.

The court carefully followed Hamm's testimony. From the credible evidence the court is convinced he either did not see the Cadillac before the impact, or he did not look. He hesitated in his testimony and at one time said he saw the Cadillac as it came over the hill; at another time just before the collision; at another time that he did not know exactly when he saw it coming. He stated he stopped when he saw the other car coming. Another time he stated he pulled out in the road and saw her, and slammed on brakes. This last version lends to credibility. Branham did say on one oc-

---

1. Population 181 according to the S. C. Highway Department. A patrolman testified it is a village, 3 stores, gin, and fire station making up the "town".

2. 28 U.S.C. 1331 et seq.

3. There is dispute as to ownership in plaintiff, treated supra.

4. S–36–292 has its northern terminal at the intersection with Highway 34.

casion that "He [Hamm] just pulled out into the road."

Sergeant Hamilton of the South Carolina Highway Patrol testified that as investigating officer he went to the scene of the collision which happened about 4:10 p. m. He found the Chevrolet in the middle of the highway headed toward Newberry. Hamm told him he was making a left turn into Highway No. 34. The patrolman later placed his patrol car at the stop sign on the secondary road, could see a car coming east on No. 34 for 345 feet. He testified the road was straight and it was open country. He found a spot where debris and water were spilled on the highway 1 foot 10 inches from center line in westbound lane (left lane travelling east). The Chevrolet was 10 feet from the spot; the Cadillac 158 feet from the spot, downhill slightly then down an embankment. At the time he found no personal injuries to either party.

There is considerable dispute as to the signs present at or near the scene. The patrolman said there was no sign warning of a speed zone on the western approach to the overpass. Plaintiff did see a curve sign some distance before she reached the overpass.

There is considerable dispute as to speed signs. At the time of trial the speed zone was maximum 45 m. p. h. At the time of the collision there was a 35 m. p. h. speed sign $\frac{1}{10}$ mile from the crest of the bridge, or 528 feet. The patrolman testified there was no city limit sign and no intersection sign as plaintiff approached. The court, at request of defendant went to and viewed the scene. There is no credible evidence that the speed of plaintiff's car caused or contributed to the collision.

Approaching Silverstreet from the West one unfamiliar with the area would find nothing to forewarn of a settlement. Today there is a 45 m. p. h. speed sign and a "drive safely" sign. There is no city limit sign. The court rode back and forth at the scene, dismounted and walked. The physical evidence at the scene in every way corroborates the testimony of plaintiff and the highway patrolman. If young Hamm had stopped and looked before he entered, he would have seen. He should have stopped, looked, and waited. There is no credible evidence that he observed any precaution.

After the collision Hamm's mother arrived. Plaintiff rode with her into Newberry, where Mrs. Hamm carried her to the family physician. Then she was taken to the Provost Marshal's Office [connected with the maneuvers]. Plaintiff immediately noticed she had a knot on her head, was bruised in the stomach, had a gash in her leg, was otherwise bruised on her body, suffered headache and backache. She was treated as an out-patient at an Atlanta hospital. Later had bed rest on orders of her doctor— stayed in bed 12 to 14 days. She is a school teacher by profession and testified she went to school pre-planning despite continued back pain. She had no back trouble before the wreck, was subjected to a hysterectomy in 1962 but suffered no residual. She now complains of severe headaches, back pains and nervousness. She described having been treated at Fort McPherson and elsewhere. She taught school in the 1963–1964 term and has been teaching since. She wears a supporting corset. She has trouble doing her housework and is not as strong as before the collision. She is hindered in teaching physical training and cannot move around to the extent her job normally requires. She complains of daily pain. One doctor who examined her found scoliosis,[5] which is not traumatic in origin, and softness of back muscles due to wearing the corset. Another testified from his x-ray examination "[I]t is most likely that at some time she has had a fracture with a mild compression of this vertebra, although the compression is not very significant. Apparently

5. Curvature of the spine.

**202**

the fractures have healed, but of course if that is true you always have some residual from an injury like that * * * and, I am sure this is not a congenital defect." The credible testimony reveals she had a back injury as a result of the collision. From this back injury she has suffered, and will continue to suffer pain and discomfort for many years.[6]

██ Evidence of property damage to the Cadillac is clear. The evidence as to ownership is not clear. Under such circumstances this court does not make findings as to the property damage as same is not in issue if plaintiff is not owner of the Cadillac.

### CONCLUSIONS OF LAW

A. The court has jurisdiction of the parties and the issues.

B. Defendant committed negligence in failing to yield the right-of-way to plaintiff.

C. Defendant committed negligence in failing to keep a proper look-out.

D. Defendant's negligence is the proximate cause of the collision.

E. Plaintiff committed no acts of negligence which would proximately cause or contribute to the collision.

F. Plaintiff is entitled to compensatory damages for her injuries, pain, suffering, expense, and inconvenience directly and proximately caused by defendant's negligence.

G. The Clerk will enter judgment for plaintiff for Seven Thousand Five Hundred Dollars actual damages in accordance with Rule 58, Federal Rules of Civil Procedure.

H. The findings and conclusions here are without prejudice to the right to pursue for property damages in any proper forum.

And it is so ordered.

---

6. At age 39 one has a life expectancy of 33.07 years according to section 26–12 S.C.Code Ann.